Charles Edward SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 71496.

Court of Criminal Appeals of Texas, En Banc.

Sept. 20, 1995.

---

524

David B. Fannin, Austin and Martin Underwood, Comstock, for appellant.

Kriste G. Burnett, Assistant District Attorney, Ft. Stockton and Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Presiding Judge.

Upon retrial[1], appellant, Charles Edward Smith, was convicted of the August 1988 capital murder of a law enforcement officer. V.T.C.A., Penal Code, Section 19.03(a)(1).

During the punishment phase the jury affirmatively answered the special issues set forth in Article 37.071(b), V.A.C.C.P. The trial judge sentenced appellant to death as required by Article 37.071(e), V.A.C.C.P. Direct appeal is automatic. Article 37.071(h), V.A.C.C.P. We affirm appellant's conviction, but vacate and remand his sentence for further proceedings in accordance with Article 44.29(c), V.A.C.C.P.

Appellant does not challenge the sufficiency of the evidence, therefore we will dispense with a recitation of the facts. Appellant raises thirty-two points of error. We will address the points as they approximately occurred at trial.

### Pre-Trial

■ Appellant alleges in point of error twenty-one that the trial court erred in overruling his motion to quash the indictment because "the grand jury which indicted [him] had adjourned for more than three days without the consent of the court in violation of the mandatory terms of Article 20.08 of the Texas Code of Criminal Procedure."

Article 20.08 provides:

"The grand jury shall meet and adjourn at times agreed upon by a majority of the body; but they shall not adjourn, at any one time, for more than three days, unless by consent of the court. With the consent of the court, they may adjourn for a longer time, and shall as near as may be, conform their adjournments to those of the court."

In a pretrial hearing[2], the judge who impaneled the grand jury testified as to his uniform policy:

"It is my policy, and I have each and every time that I have impaneled a Grand Jury in the 112th District Court for at least two years, and probably three years given the following instructions to each

---

1. Appellant was originally convicted for the same offense and sentenced to death in August 1989. This Court reversed the conviction in an unpublished opinion. *Smith v. State*, No. 71,010 (Tex. Cr.App., December 4, 1991).

2. The pretrial motions filed in appellant's first trial were carried over to the second trial. While we technically are in possession of the record of the first trial, appellant would have greatly facilitated our review of this point by making sure that the relevant part of the record of the first trial was also included with the record of this trial. Furthermore, appellant's record references in his brief are confusing in that he does not differentiate between his first trial record references and his second trial record references.

and every Grand Jury: I have instructed the Grand Jury that as a housekeeping matter, I need to inform them that the law does not allow them to recess for more than three days without consent of the Court, and that I hereby give the Grand Jury permission to convene upon proper instruction to carry out the business that is prepared and to be presented, and then to recess at the conclusion of that business for a period of time of more than three days to be reconvened on proper summons to consider further business."

We read this instruction to give the grand jury precisely the consent required under Article 20.08 for it to recess for a period of more than three days.[3] The State concedes that the requirements of Article 20.08 are mandatory, but disagrees that they were not met. In *Miller v. State*, 537 S.W.2d 725 (Tex.Cr.App.1976), we held that Article 20.08 requires only the court's consent to adjourn for more than three days and no formal order is required. Given nothing to indicate that this was not done in the instant case, we cannot say that the trial court erred in overruling the motion to quash the indictment. Point of error twenty-one is overruled.

## Voir Dire

■ In his twenty-second point of error, appellant alleges that he was denied due course of law under Article I, Section 19 of the Texas Constitution in that "[t]he State so distorted the lawful course of the whole voir dire by showing through the first prospective juror, [name omitted], that the price of honesty would be subject to practically unrestrained attack by the prosecutor."

To elucidate, the substance of appellant's argument is this: at the outset, this venireperson expressed negative feelings toward the prosecutor due to experiences she had with the State during a period in which she served as a grand juror. While she stated without prompting that these feelings would not affect her decision should she serve on the jury in the present case, the State was

entitled to explore the feelings that she had previously expressed in order to determine whether or not she could indeed be a fair and impartial juror.

Given this, the State asked various questions concerning the nature of the venireperson's complaint as well as to whom she complained or otherwise spoke at the time of or since the incident. These questions prompted a variety of objections from appellant regarding improper question and relevancy, some of which were sustained and some of which were overruled. Also, many of the objections were apparently argued in the venireperson's presence. Finally, after over 150 pages of voir dire testimony, the State exercised a peremptory strike on the venireperson and she was excused with instructions not to talk to anyone about the process until the case was over.

However, the venireperson did not receive this instruction until after the court had recessed on at least one occasion. Appellant alleges, without citation to any part of the record, that this resulted in the venireperson communicating to the other prospective jurors "a scenario of a bullying prosecutor dominating the courtroom and creating an experience of harassment and intimidation[.]" Consequently, appellant further asserts, again without citation to the record, this created a "chilling effect on the voir dire of the other prospective jurors, including the twelve jurors who were actually selected to serve."

Assuming, *arguendo*, that error occurred in these proceedings, we look to whether that error contributed to the conviction or to punishment. Tex.R.App.Proc. 81(b)(2). If we determine beyond a reasonable doubt that the error did not so contribute, then no reversal is required. *Id.*

Appellant simply asserts that the harm that allegedly occurred cannot be meaningfully measured. He references no part of the record where he or anyone attempted to question other venirepersons as to any nega-

---

3. The original argument at the pretrial hearing was that the statute speaks of an "adjournment" while the testimony refers to giving permission for a "recess." Black's Law Dictionary (5th ed. 1983) defines "adjourn" as, "[t]o put off; defer; recess; postpone."

For the purposes of this point of error, we see no distinction between the terms.

tive feelings they may have formed from anything they heard about the process. He merely speculates that some of the remaining prospective jurors may have decided "to give safe, as opposed to honest, answers in their own examination because of [this venireperson's] experience[,]" without asking them or otherwise trying to determine any ill effects.

The record, on the other hand, reveals the following: first, voir dire was conducted individually [4] so no other prospective jurors observed the exchanges first-hand; second, while we cannot ascertain exactly how many other venirepersons were privy to the veniremember's remarks, the first person to actually be selected as a juror was not chosen until some seven veniremembers later, far more than the trial court could expect to question in one day; and most importantly, third, the only remarks this venireperson made to the veniremembers present in the jury room on that particular day, contrary to appellant's assertions, were brief and essentially neutral in character. The following colloquy, which occurred on the trial court's calling time for a break, embraces the entire gist of the remarks:

> "THE COURT: Just step down and walk around and when—before you come back in, in case we are into something that we ought not be doing in your presence, would you just go back in the jury room. And, please, don't warn any of those other jurors what they are about to get into. It would be improper for you to talk to them at all.
> "[THE VENIREMEMBER:] I already did.
> "THE COURT: About what we are doing in here?
> "[THE VENIREMEMBER:] I already did.
> "THE COURT: What did you tell them?
> "[THE VENIREMEMBER:] I just told them, 'Get ready.'
> "THE COURT: That's all right. No problem. Nothing specifically about the questions?
> "[THE VENIREMEMBER:] Yes. I said you have to make a decision on capital murder on the death penalty or not. And I said you had better be able to tell them why and why not.
> "THE COURT: All right."

We cannot say that basically telling someone that they are about to be subjected to questions on a particular topic and that they will have to justify their position (or lack thereof) would necessarily result in a "chilling effect." We can say that the comments we discern were made did not contribute to the conviction or to punishment. The fact that most likely not even *one* person who subsequently sat on the jury heard even these neutral remarks further reinforces this holding. Point of error twenty-two is overruled.

In points twenty-three and twenty-five, appellant alleges that the trial court erred in granting the State's challenges for cause of venirepersons T. Brewer and R. Dominguez.

The challenge to Brewer came because of his expressed opposition to the death penalty. When reviewing such challenges, this Court has consistently followed the rule of *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), that a venireperson's views on capital punishment support exclusion for cause only when they are such that they would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Vuong v. State*, 830 S.W.2d 929, 942 (Tex.Cr.App.), cert. denied, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992), *Moody v. State*, 827 S.W.2d 875, 888 (Tex.Cr.App.), cert. denied, —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992), *Ellis v. State*, 726 S.W.2d 39, 44 (Tex.Cr.App.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

The record reveals the following sequence of events and pertinent exchanges. After the State explained the procedures of trial and the jury's job of answering questions as

---

4. This aspect is not in dispute.

**528**

opposed to assessing punishment, the following colloquy ensued:

"[THE STATE:] In your response to question 55 you say that you do not believe there should be a death penalty.

\* \* \* \* \* \*

"Tell me about that.

"[VENIREMEMBER:] Well, I don't think that the State has a right or anybody has a right to take another person's life because they have taken a life. If you have a choice, you don't. And I think that in capital murder, in any punishment, the State has a choice. And, therefore, I do think that if a person is dangerous to society, you remove them from society so they don't have any contact anymore for the rest of their life, but I don't think that you have the right on the basis of expedience or revenge or some other motive to take that life.

\* \* \* \* \* \*

"[THE STATE:] Can you think of a situation, . . ., where someone might be deserving of the death penalty?

"[VENIREMEMBER:] No. I thought about that a lot, you know, some of the really terrible things you have seen on television, some of the terrible things people have done, it makes you very angry.

"[THE STATE:] Give me some examples of the ones that makes [sic] you angry.

"[VENIREMEMBER:] Oh, someone who kidnapped a child and—over a series of many months abuses, sexually abuses, physically abuses, that child to the point of—and then finally kills them. You know, that's a very heinous crime to me, especially having children, but what—the second thought I have about that is that it's [sic] my motivation is revenge and that's not an acceptable motivation. And so it's always—first impulse may be in anger, but the second I always—second impulses always, you know, what's the motivation. And if it's revenge, then I don't think that's an acceptable motivation.

\* \* \* \* \* \*

"[THE STATE:] And in that situation [that you've just described] you don't believe that the death penalty would be an adequate form of punishment?

"[VENIREMEMBER:] No. I think that the only acceptable form of punishment to me would be life in prison."

Then the State explains and develops the individual punishment questions when the following transpires:

"[VENIREMEMBER:] See, I think I could say, 'Yes,' to the first one to say somebody is going to be a continuing harm to society and needs to be removed from the general public, but the second thing I would say that to me the mitigating circumstance is life and not taking it. And so whatever the characteristics of the person, to me, I would rather as a taxpayer pay for their continued incarceration.

"THE COURT: Is there any set of circumstances you can imagine if you were a juror knowing that we have the death penalty that you could answer that second question, 'No'?

"[VENIREMEMBER:] I don't think so.

\* \* \* \* \* \*

"[THE STATE:] So assume, for example, that back in our little scenario that you hear nothing, nothing mitigating about that defendant in that case, nothing, he has never done a good thing in his life, would you answer that question, 'Yes,' knowing that a 'Yes' answer would avoid the death penalty?

"[VENIREMEMBER:] Yes.

"[THE STATE:] Is that based on strictly your personal views?

"[VENIREMEMBER:] Mitigating circumstances is the nature of life.

"[THE STATE:] Can you think—can you envision any case at all, any scenario, where the death penalty would be appropriate to you?

"[VENIREMEMBER:] No, because it's up to the State to sufficiently isolate that person so he can't do any more harm. They have control of him already."

After this, appellant tried to rehabilitate the venireperson.

"[APPELLANT:] So getting it right down to the—what I perceive as the real issue here, if you were on the jury and you heard the evidence, and the nature of the

evidence was such that the honest answer to those issues that you are required to answer would cause the death penalty to be imposed, would you then give a dishonest answer just to keep the death penalty from being imposed?

"[VENIREMEMBER:] No. I don't think it's a dishonest answer. In the way that I read the questions in talking about the mitigating circumstance, I mean, there are mitigating circumstances outside the nature of the individual involved."

When the State then challenged the venireperson for cause, the trial judge asked for some clarification.

"THE COURT: Well, I'm sorry. I have—I just am a little bit unclear. You indicated in a response to [appellant's] question that you would not distort an answer on the mitigation question or make a dishonest answer, isn't that correct?

"[VENIREMEMBER:] Yeah. I would not make a dishonest answer.

"THE COURT: Does that mean that you can imagine a situation wherein you would answer that question in such a way that it would result in the death penalty?

"[VENIREMEMBER:] The way I understand that question is, are there any mitigating circumstances.

"THE COURT: Yes.

"[VENIREMEMBER:] And, to me, there are always mitigating circumstances in the nature of life. And so I could honest—I can't imagine a situation in which I would say that there aren't any mitigating circumstances."

■ By the veniremember's definition, he would be following the law and his oath, even if always answering the mitigation issue in the affirmative, thereby mandating the trial court to assess a life sentence. However, the United States Supreme Court addressed a similar situation and found that jurors "whether they be unalterably in favor of or opposed to the death penalty in every case—by definition are ones who cannot perform their duties in accordance with the law, their protestations notwithstanding." *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); *Staley v. State*, 887 S.W.2d 885 (Tex.Cr.App.1994). This is just such a juror. The trial court did not abuse its discretion in granting the State's challenge for cause. Point of error twenty-three is overruled.

■ In point twenty-five, appellant complains that the trial court erred in granting the State's challenge to Ricardo Dominguez under Article 35.16(a)(9), V.A.C.C.P. Appellant basically alleges: 1) that the State did not show sufficient bias to sustain a challenge for cause, and 2) that a bias against the State does not qualify as a bias in favor of the defendant and that only the latter is allowed under the Code, not the former. The latter contention is without merit. As the Amarillo Court of Appeals stated in *Ransom v. State*, 630 S.W.2d 904, 908 (Tex.App.—Amarillo 1982):

"The obvious purpose of the provisions is to guarantee fair and impartial jurors for both the State and the defendant. When a juror expresses an inability to be fair and impartial to the State, that juror is expressing a bias for the defendant and is properly excused."

*See also Holland v. State*, 761 S.W.2d 307, 317 (Tex.Cr.App.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *McCary v. State*, 477 S.W.2d 624, 628 (Tex. Cr.App.1972). However, the question remains whether an actual, sufficient bias existed. For this, we must look at the totality of the voir dire.

■ According to Webster's Ninth New Collegiate Dictionary (1991), to "equivocate" means to "avoid committing oneself in what one says" and this Court has said on numerous occasions that it is properly within the judge's discretion to grant a challenge for cause to an equivocating juror. *Zimmerman v. State*, 860 S.W.2d 89, 96 (Tex.Cr.App. 1993), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993). At one point in the voir dire, the State was asking about an in-law's conviction. The State then attempted to explore whether the veniremember harbored any bias or ill will toward the State pursuant to this incident that might taint its case. The gist of the responses during the entirety of Dominquez'

approximate 17 pages of voir dire can be seen in the following:

> "[THE STATE:] How does that make you feel about [the prosecutor]?
>
> "[VENIREMEMBER:] I don't know what to tell you.
>
> "[THE STATE:] Just give me your real feelings.... Whatever your true feelings are is what I want to know.
>
> "[VENIREMEMBER:] I guess not very good.
>
> "[THE STATE:] Okay. If he was a prosecutor in this case, do you think you might hold that against him in the presentation of his case ...?
>
> "[VENIREMEMBER:] Well, I guess. I got some mixed feelings there, you know. I guess I would have some kind of feelings.

> \* \* \* \* \* \*

> "THE COURT: My feeling is—what I understand from what I'm hearing there is, you have negative feelings about [the prosecutor], is that right?
>
> "[VENIREMEMBER:] I guess, yeah."

Finally, the following occurred:

> "THE COURT: Now, in that criminal case the prosecutor is [name omitted], will your feelings about him influence or affect your verdict to any degree?
>
> "[VENIREMEMBER:] I don't guess it would. I don't guess it would.
>
> "THE COURT: You could set it aside?
>
> "[VENIREMEMBER:] I think I could.
>
> "THE COURT: Pass the juror.
>
> "[THE STATE:] Do you think you could?
>
> "[VENIREMEMBER:] I think I could. I think I could.
>
> "[THE STATE:] Okay. Pass the juror."

Whether the defense then misunderstood whether or not he could ask questions or whether he just passed the veniremember without attempting to is unclear. Suffice it to say that the veniremember never gave an answer less equivocal than "I think ..." or "I guess...." In *Williams v. State*, 565 S.W.2d 63 (Tex.Cr.App.1978), a prospective juror was erroneously not excused where he admitted a prejudice against the accused, even though he stated he could disregard his prior association with the accused and base his decision on the evidence and the court's charge. While a trial court may hold a juror qualified who states that he can lay aside an opinion he may have formed, no such discretion vests in the court with reference to a juror with a bias or prejudice against the parties. *Gonzalez v. State*, 169 Tex.Crim. 49, 331 S.W.2d 748 (1960).

▇▇ When the feeling expressed by a prospective juror is one of bias or prejudice in favor of or against the defendant (as opposed to a bias or prejudice against the law), it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice or bias. *Williams*, supra, at 65; *Mize v. State*, 754 S.W.2d 732 (Tex.App.—Corpus Christi 1988); and *Burton v. State*, 805 S.W.2d 564 (Tex.App.—Dallas 1991).

Point of error number twenty-five is overruled.

▇▇ In the related point twenty-four, appellant avers that the trial court erred when it denied appellant's challenge for cause against venireperson Ted White. Specifically, appellant contends that White was properly challengeable for cause because he was predisposed to give greater credibility to the testimony of a Texas Ranger resulting in a bias against appellant.[5] Article 35.16(a)(9), supra.[6]

---

5. We note this is in direct contradiction to appellant's point of error twenty-five and in support of our holding: a bias for the State is, in effect, a bias against appellant.

6. Appellant professes to have preserved his point of error for our review by 1) utilizing all of his peremptory strikes, 2) requesting and being denied additional strikes, and 3) having to accept an objectionable juror he otherwise would have struck. However, appellant is mistaken. The venireperson appellant alleges was objectionable

(Gomez) was selected as an *alternate*. Under Article 35.15(d), V.A.C.C.P., strikes for alternates and strikes for the main jury are totally separate and may not be used in lieu of each other. Therefore, appellant's objection to Gomez only applies in the alternate juror context.

Furthermore, the record reveals the sequence of events was as follows:
(1) appellant used his 11th peremptory strike and the court, *sua sponte*, granted him an additional peremptory;

In his argument, appellant relies almost exclusively on *Hernandez v. State,* 563 S.W.2d 947 (Tex.Cr.App.1978). In that case, the prospective juror stated a belief that a police officer would not *tell a lie* in *any* case. Hence, that person was biased as a matter of law in that she was effectively prevented from *impartially* judging the credibility of the witnesses. Thus, the venireperson was properly challengeable. However, in this case, White was not professing that a Texas Ranger would *always* be believable simply by virtue of his position. Rather, he stated that while he might tend to believe people in certain professions over some other people he would still listen to both sides and make up his mind depending on the facts and circumstances presented. In fact, the venireperson specifically stated at one point that he believes law enforcement officers can lie.

Given the totality of the voir dire, we hold the situation to be easily distinguishable from *Hernandez,* supra. The record before us fails to establish a bias as a matter of law. *Anderson v. State,* 633 S.W.2d 851 (Tex.Cr. App.1982). Thus, it was within the trial judge's discretion to overrule the challenge for cause. *See Montoya v. State,* 810 S.W.2d 160, 170–72 (Tex.Cr.App.1989), cert. denied, 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). Point of error twenty-four is overruled.

### Guilt/Innocence Phase

In point of error seventeen, appellant contends that the State's allegedly improper questions and sidebar remarks to appellant during its cross-examination of him denied appellant a fair and impartial trial.

(2) appellant subsequently used his 12th and 13th strikes;
(3) appellant challenged one Cynthia Hokit for cause, which challenge was denied, so appellant used his 14th peremptory strike.
(4) After a recess, the court reconsidered and granted the challenge for cause at which time appellant withdrew the use of his peremptory strike (an action in which the court agreed), thus restoring his 14th strike.
(5) Appellant subsequently reused that 14th and later, his 15th.
(6) When the 12th juror was seated, appellant objected to this juror, claimed that he was out of peremptory challenges, asked for and was denied more peremptory challenges.

To begin, we feel compelled to note the inadequacy of appellant's "Argument and Authorities" for the instant point. The entirety of this section consists of one paragraph which incorporates the arguments made for points of error fourteen, fifteen, and sixteen. In reference to this incorporation, appellant adds the statement, "Suffice it to say, however, that the prosecutor's actions in the instant point of error *constitute a continuing pattern of misbehavior intended to deny the appellant a fair trial.*" (Emphasis added.)

Regardless of any similarity in argument, points fourteen, fifteen, and sixteen all concern errors allegedly committed in the *punishment* phase of trial.[7] Point seventeen, although it occurs later in the appellate brief, concerns errors allegedly committed in the *guilt/innocence* phase. Thus, those complaints in point seventeen occurred chronologically *prior to* those complaints in points fourteen, fifteen, and sixteen and cannot show a pattern which *continues* from those points.

Furthermore, point fourteen concerns references to parole, a topic clearly of no concern in the instant point of error. Point fifteen is couched in terms of prosecutorial misconduct and only cites two cases, both of which refer to improper questions that result in obvious harm and are clearly calculated to inflame the jury. Nowhere is the law applied to the facts or even how it relates to the alleged error in this instance. And finally, point of error sixteen is also couched in terms of prosecutorial misconduct. In addition to the same two cases cited for point fifteen, appellant adds two cases concerning

Had appellant truly been out of peremptory challenges, this last step would have been the preserving step. However, the record clearly indicates that he still had the extra strike that had been granted much earlier. But, apparently no one was keeping sufficient track of the peremptories to point this out. Hence, the point of error is technically not preserved since appellant had not actually run out of peremptories. However, because the State does not argue preservation, we will address the merits of the point.

7. Hence these points are not addressed in this opinion due to our sustaining of point of error thirty.

repeated acts of misbehavior on the part of the prosecutor.

Given that point seventeen does not concern the topic of parole law, nor is it couched in terms of prosecutorial misconduct, we do not see how the limited authorities are applicable here. Furthermore, even if they could be stretched to apply, appellant has nowhere in this point applied the law to the facts thus showing why he should prevail in this instance. For these reasons we hold this point of error to be inadequately briefed under Texas Rules of Appellate Procedure 74(f).

 Finally, we note that in each of the three complained of instances of improper comments in this point, appellant received an instruction to the jury to disregard the allegedly improper statement. Under the circumstances, we hold this sufficient to cure any harm that might otherwise have occurred. See *Norris v. State*, 902 S.W.2d 428 (Tex.Cr.App.1995); *Hendricks v. State*, 640 S.W.2d 932, 939 (Tex.Cr.App.1982). And in his fourth complained-of instance, wherein he alleged that the prosecutor was pointing a gun at appellant in order to intimidate him[8], appellant received the instruction he requested for the State not to take this action. Because appellant received all that he requested, there is nothing for this Court to review. *Purtell v. State*, 761 S.W.2d 360, 372 (Tex.Cr.App.1988), cert. denied, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Easterling v. State*, 710 S.W.2d 569, 580 (Tex. Cr.App.), cert. denied, 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986). Point of error seventeen is overruled.

 Appellant argues in point eighteen that the prosecutor's questioning of Daniel Tsongas "violated the appellant's right to a fair and impartial trial in that the prosecutor repeatedly disregarded the trial court's instructions and he deliberately testified as to facts that were inadmissible." As in point of error seventeen above, appellant again cites

us to no authority to support this point of error, but merely states that "[t]he arguments and authorities relied upon in points of error fourteen, fifteen, sixteen and seventeen, supra, are also applicable to the instant point of error and are reurged in this point of error."

We again hold that these arguments and authorities are different in character from the error alleged under the present point. We find this point to be inadequately briefed pursuant to the dictates of Texas Rule of Appellate Procedure 74(f) and thus nothing is presented for our review. Point of error eighteen is overruled.

 Appellant alleges in point of error nineteen that the State denied appellant a fair and impartial trial by committing prosecutorial misconduct in violating an agreed stipulation concerning the testimony of Texas Ranger Joe Coleman. Specifically he makes two arguments: 1) that the prosecutor violated Texas Rule of Evidence 804(b)(1) and, 2) that the prosecutor violated an agreed stipulation concerning the testimony.

The facts underlying this point of error are as follows: the State offered the former testimony of Ranger Coleman which had been given at appellant's first trial since the officer had died prior to the second trial. In reading this former testimony into the record, the State basically "acted out" the part of the officer, including interpreting what actions the officer might have taken in being handed a gun and badge. These interpretive actions drew objections from appellant which were then sustained by the trial court.

While appellant does not argue that the testimony itself was inadmissible under Rule 804(b)(1), he does argue that the rule provides only for reading said testimony into the record and nothing more. In fact, Rule 804(b)(1) says nothing about *how* such former testimony can be placed into the record, only that it is not excluded as hearsay.[9]

8. An action denied by the State.

9. Texas Rule of Evidence 804(b)(1) provides:
 "(b) **Hearsay exceptions.** The following are not excluded if the declarant is unavailable [(a)(4) unable to be present because of death] as a witness:

"(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

As to the alleged violation of an agreed stipulation, we find references to this stipulation in the record, but we do not find the actual stipulation. Moreover, what testimony we do read evidencing its actual content is disputed between the parties. Given no further argument or authority, we cannot say that error occurred. Point of error nineteen is overruled.

Appellant contends in point twenty that the cumulative effect of the improper questions asked by the prosecutor denied appellant a fair and impartial trial. Again appellant's alleged error focuses on points of error fourteen through nineteen. Again we overrule his point of error. As we stated in earlier parts of this opinion, points fourteen through sixteen allege errors during the punishment stage. Any error that might have occurred at this point in the trial is moot pursuant to our disposition of point of error thirty. The other alleged errors were either cured by instruction, not error, or not briefed adequately enough for us to review.

The only additional argument appellant has provided for this point of error (other than again relying on the paucity provided under the cited points) is a recitation of harmless error analysis under *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Cr.App. 1989). However, appellant has given us no further application of the law to the facts nor shown us any other reason why our disposition of the separate points should not apply here as well. Tex.R.App.Proc. 74(f). As such, point of error twenty is overruled.

■ In points twenty-six and twenty-seven, appellant claims that he was denied his right of confrontation in that he was not allowed to use the verb "beat" in his cross-examination of a State's witness.[10] In his argument on these points of error, appellant explains that one aspect of his defensive theory was that he received a "beating" at the hands of the police upon his arrest and that this later colored the so-called voluntariness of his confessions. He asserts that his not being allowed to describe this incident as a "beating" effectively denied him the right to fully cross-examine the witness on this important aspect of his defense.

The record reveals that appellant was on the ground when Deputy Bobby Calloway encountered him, but appeared as if he was trying to get up and had his hands concealed underneath him. Calloway testified on direct that he struck appellant around the head with the butt of his shotgun in order to get him under control. Appellant then began his cross-examination by asking, "So this was just a little short beating with the butt of the shotgun?" When the State objected to the terminology being used, the trial court overruled the objection and allowed the characterization to stand. The officer immediately responded that there was no beating.

It was not until after appellant persisted in characterizing the incident as a beating and the officer continued to deny that a beating occurred that the State again objected. At that time, the following transpired:

"[APPELLANT:] Okay. So your testimony to Mr. Johnson was that you could have killed him, but you just beat him with the shotgun butt instead, under the circumstances?

"[THE STATE:] Your Honor, I'm going to object to this 'beating' the defense attorney keeps wanting to use in his description of what took place. It was a striking, at the most.

"[APPELLANT:] Your Honor, if the prosecutor wants to testify, he should be sworn to take the stand. That's not an objection.

"[THE STATE:] The defense attorney has been testifying in here the whole proceeding, and I'm objecting now to his continued use of the descriptive language that the evidence doesn't support, Your Honor.

"THE COURT: Sustain the objection."

We agree with the State. Appellant's continual characterization of the incident as a "beating" was in direct contradiction to the evidence up to that point in the trial and the

---

The use of depositions is controlled by Chapter 39 of the Texas Code of Criminal Procedure."

**10.** Point twenty-six alleges that this is a violation under the Sixth and Fourteenth Amendments to the United States Constitution and point twenty-seven argues it is a violation under Article I, Section 10 of the Texas Constitution.

trial judge properly sustained the objection. However, it is clear that up until the sustaining of that objection appellant was allowed to and did attribute the description of "beating" to the occurrence. It is just as clear that appellant was in no other way prohibited from questioning police officers about any alleged use of excessive force at the time of appellant's arrest.[11] Points of error twenty-six and twenty-seven are overruled.

### Punishment Phase

■ In point of error thirty, appellant alleges that the trial court erred in not instructing the jury as required by Articles 37.071 and 37.0711, V.A.C.C.P. He explains that the court did not ask the jury whether the killing was "deliberate" or whether the killing was unreasonable in response to any provocation by the decedent. Therefore, he maintains, the court sentenced appellant to death without the authority to do so. We agree.

Appellant committed the instant offense in its entirety in 1988. This trial commenced around April, 1992. Hence, the parties first logically looked to the Texas Code of Criminal Procedure in effect at that time. This version of the Code reflects the Legislature's 1991 changes to Article 37.071 removing the question of deliberateness from the jury's consideration. However, the Senate Bill that was passed enacting these changes to the Code also expressly stated:

"SECTION 5. (a) The effective date of this Act is September 1, 1991, and the change in law made by this Act applies only to an offense that is committed on or after September 1, 1991.

\*　　\*　　\*　　\*　　\*　　\*

"(b) An offense before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for this

purpose." Tex.S.B. 880, Sec. 5, 72nd Leg., R.S.1991 V.T.S.L.S. Chapter 838.

Hence, these changes did not apply to appellant's trial and the prior Article 37.071 including the deliberateness question controlled. By failing to give this question at trial, the court received an incomplete verdict and thus was without authority to sentence appellant to death.[12] *Powell v. State,* 897 S.W.2d 307 (Tex.Cr.App.1994). Appellant's thirtieth point is sustained.

In light of this holding, the remaining points of error arising from and affecting only the punishment stage of appellant's trial, none of which challenge the sufficiency of the punishment evidence, are dismissed as moot.[13] Under the mandate of Article 44.251, V.A.C.C.P., we affirm the judgment, but vacate appellant's sentence of death and remand to the district court for further proceedings in accordance with the dictates of Article 44.29(c).

CLINTON, Judge, concurring.

I write separately to supplement the majority's treatment of appellant's twenty-third point of error. Appellant claims the trial court erred to grant the State's challenge for cause against venireman Timothy Brewer. Brewer was a Methodist minister who did not believe that death could be an appropriate punishment under any circumstances, even going so far as to opine that if Adolph Hitler himself were on trial, he could not impose the death penalty. The law was adequately explained to Brewer and he persisted in asserting that "there are always mitigating circumstances in the nature of life." The State did not articulate any grounds for its challenge for cause, but under the circumstances we may presume "the specific grounds were ... apparent from the context." Tex.R.App.Pro., Rule 52(a). The trial court could fairly have concluded from Brewer's responses that he would always answer the second special issue under current Arti-

---

11. Appellant makes this same complaint with regard to his questioning of one Lieutenant Johnny Hatcher. However, we find the same holding *to apply.*

12. The provocation issue, on the other hand, is required only if there is evidence of provocation by the victim. Given our ruling as to the omis-

sion of the "deliberateness" issue, we need not address this contention.

13. This includes points one through sixteen, twenty-eight, twenty-nine, thirty-one, and thirty-two.

cle 37.071, § 2(e) affirmatively on the basis of considerations having no possible bearing on "the defendant's moral blameworthiness." *Id.*, § 2(f)(4).

We have elsewhere suggested that:

"categorical opposition to the death penalty can support a trial court's conclusion that a venireman is 'substantially impaired' under *Wainwright v. Witt*, [469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)], at least if that opposition would cause the venireman invariably to answer the special issue required to be submitted by subsection [2](e) [of current Article 37.071] in such a way as to prevent imposition of the death penalty. Cf. *Staley v. State*, 887 S.W.2d 885 (Tex.Cr.App.1994) (venireman who maintained his categorical opposition to death penalty would cause him invariably to answer jury nullification instruction in satisfaction of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in such a way as to prohibit imposition of death sentence was properly subject to State's challenge for cause).

*Riley v. State*, 889 S.W.2d 290, at 301, n. 4 (Tex.Cr.App.1994) (Opinion on State's motion for rehearing). It was within the trial court's discretion, given the voir dire set out in the majority opinion at 528–529, to conclude Brewer was such a venireman.

The only problem is that current Article 37.071 was not the law applicable to the trial of this offense. Otherwise we would not be vacating appellant's death sentence and remanding the cause for a new punishment hearing on authority of *Powell v. State*, 897 S.W.2d 307 (Tex.Cr.App.1994). It is a bit of an anomaly, though not noted by the majority, that venireman Brewer should have been excluded for cause on.the basis of an inability to follow a phase of the law that manifestly does not apply—or at least *should* not have been applied—in this cause.

Nevertheless, Brewer proved himself to be challengeable on a related basis that *was* applicable to this cause. The statutory mitigation instruction clearly did not apply here, since the offense was committed in 1988. But even before the advent of current Article 37.071, § 2(e), a capital defendant might have been entitled under the Eighth Amendment to a mitigation instruction, either in the form of a non-statutory special issue or a nullification instruction. *State v. McPherson*, 851 S.W.2d 846 (Tex.Cr.App.1992). Whether or not the defendant was entitled to the instruction depended upon whether evidence was presented in mitigation having no relevance to the former statutory special issues. *Id.*, at 850. Of course, there was no way for the parties to tell during voir dire whether a mitigation instruction of some kind would have been required under *Penry v. Lynaugh*, supra. It is only after all the evidence has been presented at the punishment phase that the trial court can determine whether a *Penry* instruction is necessary. Given that uncertainty, the State is entitled to a juror who would not use a *Penry* instruction, should one be submitted, as a way to vindicate his categorical opposition to the death penalty. *Staley v. State*, supra. The trial court might well have concluded Brewer was challengeable for cause on this basis. This is sufficiently similar in principle to the basis upon which the trial court apparently *did* grant the challenge for cause that I am willing to agree there was no error.

For this reason I agree that appellant's twenty-third point of error should be overruled. I otherwise concur in the Court's judgment.