**Opinion issued February 21, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-17-00760-CR

———————————————

**CHRISTOPHER GONZALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 147th District Court**
**Travis County, Texas***
**Trial Court Case No. D-1-DC-16-301897**

---

## MEMORANDUM OPINION

Following his jury trial and conviction for aggravated robbery, appellant

Christopher Gonzales challenges the sufficiency of the evidence to support his

---

\* The Supreme Court of Texas transferred this appeal from the Court of
Appeals for the Third District of Texas to this Court. *See* TEX. GOV'T CODE
§ 73.001. We are unaware of any conflict between precedent of that court
and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

conviction. He also contends that the trial court's decision to deny his challenge for cause against a venire member was improper and that he is therefore entitled to a new trial. Because Gonzales's sufficiency claim is contradicted by the record and because the trial court properly denied Gonzales's challenge for cause, we affirm.

## Background

Y.S. was cancelling a layaway order at a pawn shop when she noticed appellant Christopher Gonzales standing very close to her. After receiving about $500 for cancelling the order, she decided to strike up a conversation with Gonzales. The two seemed to hit it off. Y.S. gave him her phone number as she was leaving. The two made plans for Gonzales to come over to Y.S.'s house in the evening. He arrived around 8:30 PM.

The two talked for a while as they drank beer. Gonzales began smoking something from a pipe that reminded Y.S. of methamphetamine. She thought about asking him to leave, but she did not. Eventually, and after Gonzales made some advances towards Y.S., the two became intimate in her bedroom.

Afterwards, Gonzales's phone started to ring. He told Y.S. that it was his girlfriend, so Y.S. asked him to leave. But Gonzales said that he could not go home smelling like a woman. The two ended up back in Y.S.'s bed. Gonzales moved close to her, in a "spooning" position.

While in bed, Gonzales asked Y.S. why she went into his pants and looked through his phone. She had no idea what he was talking about, but she could tell that he was getting angry. He then grabbed her by the neck and started choking her. Y.S. started to kick him in an attempt to escape but was unsuccessful. He told her that if he had to lose everything, she "was going to lose everything, too." Grasping for air, she kicked one last time. The kick pushed her off the bed and freed her from Gonzales's grip. But Gonzales then grabbed her by the hair, pulled her arm behind her back, forced her into the kitchen, and said, "I want everything in your house that's valuable." After searching the kitchen, he threw her into a closet and grabbed two watches on top of her dresser. He repeatedly asked her where she put the money from the pawnshop, but she denied having it. He instructed her to sit on the toilet so he could search the closet. After finding nothing, he forced her back into the closet, got on top of her, and began strangling her again. She thought she was going to die but, to her surprise, he let go. He told her to sit back down on the toilet. He then locked her in the bathroom by tying the bathroom-door handle to another door handle with the cord to her curling iron. Gonzales then left the apartment, taking with him Y.S.'s purse, two wallets, two watches, roughly $140, miscellaneous jewelry, sunglasses, car keys, cell phone, and garage-door opener. Y.S. forced her way out of the bathroom and used an old cell phone to call the police.

Eventually, police found and arrested Gonzales. The State charged him with aggravated robbery, and the case was set for a jury trial. During voir dire, defense counsel questioned the venire about bias. One of the venire members, Garlington, stated that he could try to be fair but would be "certainly starting off biased." Guerrero, another venire member, expressed her agreement with Garlington. After the venire members were given an explanation of the law and the presumption of innocence, the trial court asked if any of the venire members "assumed that the defendant was guilty." Garlington answered yes, Guerrero answered no. Garlington and a number of other venire members who agreed with him were dismissed.

After voir dire, defense counsel challenged Guerrero "on the issue of prior bias based on a belief that [Gonzales] is already guilty of something." The trial court responded, "Well, when I asked the clarifying question about would it influence their verdict," she said it would not. Defense counsel then requested that Guerrero be called for more questioning, and the trial court obliged. During her subsequent questioning, Guerrero stated that despite her initial assumption that Gonzales must have done something serious to get brought into court, she would not let that assumption influence her verdict and would follow the trial court's instructions. Defense counsel renewed his challenge for cause, and the trial court again denied it. Defense counsel used his last peremptory strike to remove

4

Guerrero from the panel and then asked the trial court for an additional peremptory strike, noting that, had it granted his challenge for cause against Guerrero, he would not have had to use his last peremptory strike on her. The trial court denied his request. The jury found Gonzales guilty after two days of trial and hearing from witnesses who testified to the account described above. The trial court sentenced him to twenty-five years' confinement. Gonzales now appeals.

## Analysis

Gonzales raises two issues. He contends that the evidence was insufficient to support his conviction for aggravated robbery. He next maintains that the trial court erroneously denied his challenge for cause of Guerrero and that he is therefore entitled to a new trial. We overrule both issues.

## I.    Sufficiency of the evidence

Gonzales argues that the evidence was legally insufficient to prove aggravated robbery. This court reviews the legal sufficiency of the evidence by viewing all of the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Ross v. State*, 543 S.W.3d 227, 234 (Tex. Crim. App. 2018). A person commits aggravated robbery by using or exhibiting a deadly weapon while knowingly or intentionally causing, threatening, or placing another

5

in fear of imminent bodily injury for the purpose of obtaining control of another's property. TEX. PENAL CODE §§ 29.01(1), 29.02, 29.03(a)(2).

Gonzales contends that the evidence was insufficient to establish that his thievery occurred during or immediately after his assault of Y.S. The contention is contradicted by the record. During her testimony, Y.S. explained that moments after she broke free from Gonzales's grip around her throat, he grabbed her by the hair, pulled her arm behind her back, forced her to the kitchen, and said, "I want everything in your house that's valuable . . . . Don't play with me. I'll kill you." Gonzales then brought Y.S. to her bathroom and instructed her to remain seated on the toilet. After failing to find the money Y.S. received from the pawnshop, Gonzales became enraged. He then grabbed Y.S., threw her into the closet, and began strangling her again, stating "where's that money at. . . . I ain't playing with you." A rational factfinder could reasonably have found that Gonzales's assault of Y.S. occurred during and immediately after he robbed her. We overrule the first issue.

## II.    Denial of challenge for cause

Gonzales next contends that the trial court improperly denied his challenge for cause against venire member Guerrero. "If a trial judge errs in overruling a challenge for cause against a venire member, then a defendant is harmed if he uses a peremptory strike to remove the venire member and thereafter suffers a detriment

from the loss of the strike." *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). Gonzales was denied an additional peremptory strike after using his last strike on Guerrero. Gonzales contends that Guerrero was biased as a matter of law. To demonstrate harm, Gonzales must show that the trial court erred by denying his challenge for cause against Guerrero. *Id.*

There is a distinction between a true bias against one of the parties and an opinion that can be aside. *See Smith v. State*, 907 S.W.2d 522, 530 (Tex. Crim. App. 1995).[2] "While a trial court may hold a juror qualified who states that he can lay aside an opinion he has formed, no such discretion vests in the court with reference to a juror with a bias or prejudice against the parties." *Id.* (citing *Gonzales v. State*, 331 S.W.2d 748 (1960)); *see also Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982). Thus, when a venire member stated that she could render an impartial verdict and set aside her assumption of guilt that was based on pretrial publicity, the trial court's decision to overrule the defendant's challenge for cause was proper. *See Kemp v. State*, 846 S.W.2d 289, 299 (Tex.

---

[2] There is also a distinction between bias against a party and bias against the law. *See, e.g.*, *Smith*, 907 S.W.2d at 527 (discussing a venire member's "expressed opposition to the death penalty"). When the bias is against the law, the sole question to answer is whether that bias would prevent or substantially impair the venire member's ability to abide by her oath and follow the law. *Id.*; *see also Riley v. State*, 889 S.W.2d 290, 301 (Tex. Crim. App. 1993) ("[A]ny venireman who could answer the special issues according to the evidence, without conscious distortion or bias, could follow the law, irrespective of his willingness to 'accept' the death penalty in the abstract."). This case does not involve a bias against the law.

Crim. App. 1992). But when a venire member who stated that he had past dealings with the defendant that were negative and that he was prejudiced against the defendant because of those past dealings, the trial court's decision to overrule the defendant's challenge for cause was erroneous despite the venire member's later statement that he could set aside those past dealings and base his decision on the evidence and the trial court's charge. *See Williams v. State*, 565 S.W.2d 63, 65 (Tex. Crim. App. 1978).

Guerrero's agreement with Garlington that Gonzales was likely guilty was based on Garlington's statement that, given "the cumbersome process that our justice system is today, I assume that he did it" because "it's so rare that you get in that chair if you didn't." That assumption was based on an opinion, not a bias against Gonzales. *Compare Smith*, 846 S.W.2d at 299 (opinion of guilt based on pretrial publicity), *with Williams*, 565 S.W.2d at 65 (bias against defendant based on prior personal interactions), *McBride v. State*, 7 S.W.2d 1091, 1092–93 (1928) ("prejudice against appellant" constrained the court "to hold that the learned trial judge fell into error in overruling the challenges to the jurors"), *Hooper v. State*, 272 S.W. 493, 494–95 (1925) (stating that, during prohibition era, venire member's statement that he would require the accused to "prove his innocence" because of his stated "prejudice against persons being in possession of whiskey

8

save upon the prescription of a doctor" was bias against defendant). Accordingly, we reject Gonzales's argument that Guerrero was biased as a matter of law.

In light of our conclusion that Guerrero's agreement with Garlington was based on an opinion, the question becomes whether she could put aside that opinion and render an impartial verdict. *See Penry v. State*, 903 S.W.2d 715, 728 (Tex. Crim. App. 1995). The answer to this question lies within the sound discretion of the trial court. *See Kemp*, 846 S.W.2d at 299. To establish that the trial court abused its discretion by denying his challenge for cause, Gonzales must show that the Guerrero "understood the requirements of the law and could not overcome . . . [her] prejudice well enough to follow the law." *Gonzales v. State*, 353 S.W.3d 826, 832 (Tex. Crim. App. 2011). Gonzales fails to carry that burden.

After expressing her agreement with Garlington, the venire members were provided an explanation of the law and the presumption of innocence. Following this explanation, the venire members were asked whether any of them, before hearing any of the evidence, believed that Gonzales was guilty. Garlington stated that he still held that belief, and he was properly excused for cause. *See, e.g.*, *Kemp*, 846 S.W.2d at 299. Guerrero, on the other hand, stated that she no longer held that opinion. Further, during subsequent questioning of Guerrero, she stated that she would place the burden entirely on the State to prove its case beyond a reasonable doubt; that if she had a doubt, she would "absolutely" vote to acquit;

9

that despite her initial opinion that Gonzales must have done something serious to get brought into court, she would not let that opinion influence her verdict and would follow the trial court's instructions; and that she would not hold Gonzales's choice not to testify against him. In light of the entire record, the trial court reasonably could have concluded that Guerrero could lay her opinion aside and render an impartial verdict. Accordingly, the trial court did not abuse its discretion by denying Gonzales's challenge for cause. Gonzales's second issue is overruled.

**Conclusion**

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

10