

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00384-CR

———————————————————

STEPHEN MELVIN BONDS, Appellant

V.

THE STATE OF TEXAS

———

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 61,080-B

———

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. Introduction

Appellant Stephen Melvin Bonds appeals his conviction for felony delivery of methamphetamine. In two issues, he complains of the trial court's denial of his challenge of a juror for cause and of its admission of certain extraneous-offense evidence during the punishment stage. Because the trial court did not err by denying the challenge for cause and allowing the evidence, we affirm the trial court's judgment as modified to correct a clerical error.

## II. Background

Bonds was charged with delivering between four and 200 grams of a controlled substance after he sold thirteen grams of methamphetamine to an undercover police officer. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .112(a), (d). A jury found him guilty, and the trial court sentenced him to twenty-five years' incarceration. Because his appeal relates only to voir dire and the punishment phase, our discussion of the facts will be limited.

### A. Voir Dire

Early in voir dire, the prosecutor posed a hypothetical, asking a prospective juror—Veniremember Watson—if he would be "itching to get after someone" accused of burglarizing vehicles if somebody had recently broken into Watson's vehicle. Watson answered, "If he was proven guilty, sure."

Later, Watson admitted that his brother and sister had both struggled with methamphetamine addiction, so he had witnessed its effects firsthand. Specifically, he stated, "And it affects their lives, but it affects every life around them." The prosecutor and Watson then shared the following exchange:

> [Prosecutor]: Now, would you be able to set that aside and look at the facts in this particular case and judge this case based on - -
>
> [Watson]: I would like to think I could. It's still in the back of my head, you know, so it's always going to be there.
>
> [Prosecutor]: Sure. Right. The thing is, you know, part of the jury system means that we're asking for real people from the community, and there's certain things you might not be able to get out of the back of your head. But could you commit to holding the State to its burden and requiring us to prove each element beyond a reasonable doubt and make your determination, ultimately, based on the facts presented in court?
>
> [Watson]: I would like to think I could do that, yes.
>
> [Prosecutor]: And if you're ordered to by the judge, would you be able to do that?
>
> [Watson]: Sure.

The prosecutor also asked Watson, "If you had to hand down a verdict right this minute, what would your verdict be?" Watson replied, "Well, it would have to be not guilty."

Bonds challenged Watson for cause, arguing that he would be unable "to disregard his personal involvement and family involvement with methamphetamine usage when considering the evidence and, thus, he would not be able to be a fair and impartial juror." Though Bonds's counsel referred to Watson's "demeanor" and

3

"body language," he did not describe anything for the record. The trial court called Watson to the bench for a conference with Bonds's counsel, the prosecutor, and the trial court:

> [Bonds's counsel]: . . . I believe you told us that there was some family or personal issues involving methamphetamine that you said you would still have in the back of your mind when considering the evidence in this case. I think you also said that you would like to think you could disregard those when considering the evidence and deliberating on the case or being a juror on this case, so I just need to put a finer point on that - -
>
> . . . .
>
> - - and ask you if you think that family or personal involvement that you've had with respect to drug usage or your family members, if that would prevent you from fairly and impartially deliberating on the case or being able to keep that out of the back of your mind when deciding how to be a juror?
>
> [Watson]: Okay. Well, I think what I said is I'd try my best to do that or I would think I could do that. I mean - - You know, I mean, all I can do is say that I would try to keep it out, but it's there. I mean, it's always there. But the evidence is the evidence. I'll go with that.
>
> . . . .
>
> [Bates's Counsel]: I hate to put you on the spot, but are you saying you cannot commit to keeping that out of the back of your mind when considering this evidence?
>
> [Watson]: I guess just the whole case is going to be in the back of my mind, but the meth part of it will probably be there. I mean, I'd like to think I could hear the evidence and go by that.
>
> [Bates's Counsel]: So to put it on the other side of the coin, could you commit to disregarding any of those personal or family issues when deciding the case?
>
> [Watson]: I would like to think I could, yeah. That's all I can say is I think I'll try to do that.

[Bates's Counsel]: I understand. I'm not trying to attack you.

[Watson]: Okay. I think I've said that two or three times.

[Bates's Counsel]: Just to put a finer point, you cannot commit to that, to disregarding any of your family or personal issues when deciding the evidence in this case?

[Watson]: Uh - -

[Prosecutor]: Well, may I, Judge?

THE COURT: You may.

[Prosecutor]: Again, you're not a robot. You don't have to say that nothing about your family situation is never going to enter your mind. I think I already asked you this, but can you commit to following the Judge's instructions?

[Watson]: I can.

[Prosecutor]: And base your verdict on the evidence, solely on the evidence that's presented here in court?

[Watson]: Yeah, I think I can.

. . . .

THE COURT: Okay, the Court will consider [Watson] to have been rehabilitated with regard to the concerns of the defense and deny the strike for cause.

After the trial court denied Bonds's challenge for cause on Watson, Bonds used a peremptory strike to remove Watson from consideration. He also requested an additional peremptory strike in order to strike another potential juror (Juror Number 12), arguing that if the trial court had granted his challenge for cause on Watson, he would have used his peremptory strike on Juror Number 12. The trial court denied

his request. Juror Number 12 was selected for the jury panel, and after a single-day trial, the jury found Bonds guilty.

## B. Punishment Phase

Bonds elected to have punishment assessed by the trial court. During the punishment hearing, the State introduced evidence of multiple extraneous offenses, including a prior robbery conviction, testimony and body-camera recordings of an arrest of Bonds when he absconded during his trial, and testimony regarding a traffic stop of Bonds driving a vehicle in which police found methamphetamine and drug paraphernalia. The latter is the subject of Bonds's second issue on appeal.

Wichita Falls Police Officer Tony Ozuna testified that in April 2019, as part of his work with the organized-crime unit, he participated in an investigation of Bonds. As part of that investigation, he was surveilling Bonds's home when he observed Bonds leave his home, drive to another house, and thirty minutes after entering that house, get back into his vehicle with two more occupants. He asked another officer to conduct a traffic stop, and that officer pulled Bonds's car over in a convenience-store parking lot. Officer Aaron New testified that he assisted with the stop, particularly the search of the vehicle after Bonds admitted to the existence of drug paraphernalia inside. Officer New discovered two baggies of methamphetamine, three empty plastic baggies, and a homemade methamphetamine bong containing "methamphetamine shards." The baggies of methamphetamine were found in the front-seat area, between the center console and the passenger's seat. None of the

men admitted that the methamphetamine was theirs. Officer Ozuna testified that the packaging of the suspected meth and the empty baggies were consistent with the street-level sale and transportation of methamphetamine.

In Bonds's counsel's closing argument, he objected to the trial court's consideration of the April 2019 incident on the basis that the State had not proven the extraneous offense—his alleged possession of methamphetamine—beyond a reasonable doubt. The trial court overruled the objection, opining that "the drugs found in the car on that day were in possession of all three of the persons in the car," and stating that it was satisfied that the State proved beyond a reasonable doubt that Bonds was one of the persons in possession of the drugs. The trial court assessed a 25-year sentence.

### III. DISCUSSION

### A. Challenge for Cause

In his first issue, Bonds argues that the trial court erred by denying his challenge for cause against Watson because he was biased as a matter of law. He points to Watson's statements that his brother's and sister's methamphetamine problems would "always" be in the back of his mind, equating it to an "absolute position he staked out regarding his family problems" and arguing that he was therefore beyond rehabilitation. He also takes issue with the prosecutor's statement of "you don't have to say that nothing about your family situation is never going to enter your mind."

7

In order to successfully challenge a juror for cause, a party must establish that the veniremember held a bias against the party. Tex. Code Crim. Proc. Ann. art. 35.16(a)(9); *Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and follow instructions in accordance with the law. *Tracy*, 597 S.W.3d at 512. Bias exists as a matter of law if a juror admits that he is biased for or against the defendant. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. [Panel Op.] 1982). If bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether it exists to such a degree that a juror is disqualified. *Id.*

We review a trial court's decision to grant or deny a challenge for cause for an abuse of discretion and consider the record as a whole. *Tracy*, 597 S.W.3d at 512. We afford considerable deference to its decision because it is in the best position to evaluate a veniremember's demeanor and responses, particularly when the veniremember's answers are "ambiguous, vacillating, unclear, or contradictory." *Id.*

Contrary to Bonds's contentions of bias as a matter of law, Watson did not express any direct bias against Bonds. That sort of bias is only established when a juror unequivocally states that he will not be able to follow the law because of his bias. *See Scott v. State*, 419 S.W.3d 698, 704 n.7 (Tex. App.—Texarkana 2013, no pet.) ("Only if the juror indicates he cannot be fair and impartial is bias established as a matter of law."); *Ewing v. State*, No. 02-05-00039-CR, 2006 WL 1791597, at *5 (Tex.

8

App.—Fort Worth June 29, 2006, no pet.) (mem. op., not designated for publication) (holding veniremember was not biased as a matter of law though he initially hesitated and said he did not "think" he could fairly consider the minimum punishment). We therefore defer to the trial court's ruling. *See Anderson*, 633 S.W.2d at 854.

Before reaching the substantive nature of the proceedings, Watson intimated that he could only find someone guilty if proven so. Later, despite noting that he may have his brother's and sister's methamphetamine struggles in the back of his mind, Watson repeatedly agreed that he would consider the evidence and follow the trial court's instructions. We disagree with Bonds's assertion that the situation here is like that in *Comeaux v. State* in which the Beaumont court held that the potential juror's answers demonstrated bias; the potential juror in that case was never asked if he could follow the law that would be given in the charge. 413 S.W.3d 176, 183 (Tex. App.—Beaumont 2013), *affirmed* 445 S.W.3d 745 (Tex. Crim. App. 2014). In this case, Watson affirmed more than once that he would follow the law as given; *Comeaux* is therefore easily distinguished.

Similarly distinguishable are death-penalty cases upon which Bonds relies for the idea that Watson's use of the word "always" rendered him objectionable: *Colburn v. State*, 966 S.W.2d 511, 518 (Tex. Crim. App. 1998), and *Smith v. State*, 907 S.W.2d 522, 529 (Tex. Crim. App. 1995). In *Colburn*, the Court of Criminal Appeals upheld the trial court's grant of the State's challenge of a veniremember who expressed that, in considering the mitigation special issue, "There would probably be mitigating

9

circumstances. Personally, I feel there would always be." *Colburn*, 966 S.W.2d at 518. In *Smith*, the court upheld the State's challenge of a veniremember who stated, "[T]o me, there are always mitigating circumstances in the nature of life. . . . I can't imagine a situation in which I would say that there aren't any mitigating circumstances." *Smith*, 907 S.W.2d at 529. Those veniremembers, by their own admissions, could not perform their duties in accordance with the law, because if they "always" found mitigating circumstances, they could never impose the death penalty. *Colburn*, 966 S.W.2d at 518; *Smith*, 907 S.W.2d at 529; *see also Morgan v. Illinois*, 504 U.S. 719, 735, 112 S. Ct. 2222, 2233 (1992) ("[S]uch jurors—whether they be unalterably in favor of, or opposed to, the death penalty in every case—by definition are ones who cannot perform their duties in accordance with law, their protestations to the contrary notwithstanding."). Watson's statements that his relatives' experiences with methamphetamine addiction would "always" be in the back of his mind are not the same. He never expressed that those personal experiences would prevent him from considering the evidence or the law—in fact, he affirmed multiple times that he would consider the evidence and the law regardless—whereas the veniremembers' statements in *Smith* and *Colburn* indicated that they could not consider the full range of punishment. We therefore find *Smith* and *Colburn* distinguishable from the facts presented in this case.

Considering the totality of Watson's responses in context, we cannot conclude that the trial court abused its discretion in denying Bonds's challenge for cause. *See*

10

*Jones v. State*, No. 02-19-00277-CR, 2020 WL 2071952, at *3 (Tex. App.—Fort Worth Apr. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (declining to find that the trial court abused its discretion where prospective juror answered that she could honestly consider the full range of punishment). Accordingly, we overrule his first issue.

## B. Extraneous-offense Evidence

In his second issue, Bonds argues that the trial court committed reversible error by overruling his objection to the trial court's consideration of the April 2019 incident as an extraneous offense because the State did not prove beyond a reasonable doubt that Bonds possessed the methamphetamine discovered in the car.

In determining the appropriate punishment, the trial court could consider "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). We will review the trial court's determination to admit the extraneous-bad-acts evidence for an abuse of its discretion. *See McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). Because the trial court acted as the factfinder here, we will evaluate the sufficiency of the evidence underlying its determination that the State showed beyond a reasonable doubt that Bonds engaged in the bad act. *See Hughes v. State*, No. 02-05-306-CR, 2006 WL 3114438, at *3 (Tex. App.—Fort Worth Nov. 2, 2006, no pet.) (mem. op., not designated for publication). In doing so, we view the evidence in the

11

light most favorable to the determination and decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

Bonds's argument is that the State had to prove that Bonds was guilty of possessing the methamphetamine discovered in the April 2019 incident, but that is a misinterpretation of Article 37.07's allowance of extraneous-offense or bad-act evidence. The Court of Criminal Appeals has explained that the offering party does not have to "prove that the act was a criminal act or that the defendant committed a crime." *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). It further explained the important difference between guilt-phase evidence and punishment-phase evidence:

> Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed. Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior acts are attributable to the defendant beyond a reasonable doubt.

*Id.*; *see also Hanson v. State*, 269 S.W.3d 130, 133–34 (Tex. App.—Amarillo 2008, no pet.) ("When an extraneous bad act is admitted for consideration during the punishment phase, the jury is not required to assess whether a statutory crime occurred; rather, its obligation is to determine, beyond a reasonable doubt, whether that appellant was involved in the bad act being offered as evidence."). Applying this standard to the situation in this case, the trial court had to determine beyond a

12

reasonable doubt that Bonds was in the vehicle in which the methamphetamine and methamphetamine bong were discovered. *See Haley*, 173 S.W.3d at 515. (reversing intermediate court's holding that the evidence was insufficient to establish defendant was guilty of extraneous offense of murder).

The State presented evidence that in April 2019, police pulled over a car Bonds was driving and, in a subsequent search of the car, discovered a bong containing methamphetamine shards and two baggies of methamphetamine. Two officers identified Bonds as the driver of the vehicle. Viewing the evidence in the light most favorable to the trial court's ruling, it was more than sufficient to support its finding that the State established beyond a reasonable doubt that Bonds was in the vehicle in which the methamphetamine was discovered.[1] *See, e.g.*, *id.* at 514–15. We therefore overrule Bonds's second issue.

## C. Clerical Error in the Judgment

In its brief, the State points out a clerical error in the judgment's designation of the degree of the convicted offense. In the "Degree of Offense" field of the judgment, the typed designation of "1ST DEGREE FELONY" has been crossed out and handwritten next to it is "2nd Degree Enhanced to 1st Degree Punishment,"

---

[1]The trial court found that the evidence was sufficient to establish Bonds's possession of the methamphetamine, but we are not bound by that finding. *Gongora v. State*, 214 S.W.3d 58, 64 (Tex. App.—Fort Worth 2006, pet. ref'd) ("[I]f the trial court's ruling on the admission of evidence is correct under any theory of law, even if the trial court gives the wrong reason for its ruling, we must affirm the trial court's decision to admit the evidence.").

13

accompanied by the trial judge's initials. Bonds was convicted of delivery of four to two hundred grams of methamphetamine, a first-degree felony. Tex. Health & Safety Code Ann. §§ 481.102(6) (classifying methamphetamine as a penalty-group-one drug), 481.112(d) (designating possession of four to two hundred grams of a penalty-group-one drug as a first-degree felony). His conviction was enhanced by a prior felony conviction. *See* Tex. Penal Code Ann. § 12.42(c)(1) (requiring, upon conviction for a first-degree felony where the defendant has a prior felony conviction, an enhanced punishment range of fifteen to ninety-nine years).

The State is correct; the judgment's statement that the conviction was for a second-degree felony is wrong. Despite this, Bonds was punished within the applicable punishment range and we have no indication that the error was the result of judicial reasoning. *See Garza v. State*, 298 S.W.3d 837, 845 (Tex. App.—Amarillo 2009, no pet.) (holding similarly). The error was therefore clerical in nature and we are authorized to modify the judgment to accurately reflect his conviction for an enhanced first-degree-felony offense. *See* Tex. R. App. P. 43.2(b).

## IV. CONCLUSION

Having overruled each of Bonds's issues on appeal, we affirm the trial court's judgment as modified to reflect his conviction for a first-degree felony enhanced by a prior conviction.

14

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 1, 2021