# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00058-CR

**Dedric Dixon, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-17-904062, THE HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Dedric Dixon of felony murder, *see* Tex. Penal Code § 19.02(b)(3), and assessed his punishment, enhanced pursuant to the repeat offender provision of the Penal Code, at confinement for eighty-eight years in the Texas Department of Criminal Justice, *see id.* § 12.42(c)(1). On appeal, appellant complains that the trial court erred in granting a State's challenge for cause, challenges the sufficiency of the evidence supporting his conviction, and requests modification of the written judgment of conviction to correct non-reversible error. We modify the judgment and, as modified, affirm the trial court's judgment of conviction.

## DISCUSSION

Appellant raises three points of error. In his first point of error, he asserts that the trial court erred in granting a State's challenge for cause against a veniremember who expressed

bias against the State. In his second point of error, appellant claims that the evidence is insufficient to support his conviction for felony murder because it fails to prove that he discharged the firearm that caused the victim's death. In his third point of error, appellant seeks modification of the written judgment of conviction, contending that non-reversible error related to his plea to the enhancement paragraph of the indictment requires correction.

**Challenge for Cause**

In his first point of error, appellant contends that the trial court erred in granting the State's challenge for cause against Veniremember Mark Ellis.

During the State's voir dire questioning, Veniremember Ellis expressed negative feelings about prosecuting attorneys and indicated that his feelings would elevate the State's burden of proof to "higher" than beyond a reasonable doubt. Based on those responses, after both sides concluded their voir dire examinations, the State challenged Ellis for cause because "he had a negative attitude about the — criminal justice [system] and, as a result, would hold the State to a higher burden of proof." Appellant did not agree to the strike, and Ellis was brought in for individual questioning.

Upon further questioning, Ellis agreed that, in his previous answers, he said that because of his negative attitude about prosecutors, he would hold the State to a higher burden than beyond a reasonable doubt. He then expressed his opinion that the criminal justice system is "a busted system" because prosecuting attorneys are "involved in the process of prosecuting" "[w]hether or not the guy is innocent or guilty" "even if [the prosecutors] don't think that person is guilty." On questioning by defense counsel, Ellis indicated that he "under[stood] the beyond a reasonable doubt" and "[could] live with that."

2

Then the following exchange ensued with the prosecutor:

| PROSECUTOR: | Would you agree that you have a bias against the State? |
|---|---|
| VENIREMEMBER ELLIS: | I think I have a bias against that position, a person doing that job. If you want to call that the State, so be it. |
| PROSECUTOR: | A bias against the prosecution in this case, is that a better way to put it? |
| VENIREMEMBER ELLIS: | Right. |

Upon further questioning by defense counsel, Ellis indicated that he would be able to deliver a guilty verdict if the State convinced him of the defendant's guilt beyond a reasonable doubt. The individual questioning of Ellis concluded with that response.

The State re-urged its challenge for cause, stating:

It's actually not so much about the burden of proof as it is that he has a bias against the State. If a juror came up here and said, "Hey, I have a bias against the defendant," then there would be no question he would be struck for cause. And the same should apply to the State.

The trial court granted the State's challenge for cause, explaining that Veniremember Ellis "radiated a lot of hostility and basically accused the State of almost being corrupt because they're going to charge anybody whether they're guilty or not."

A trial court's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Gardner v. State*, 306 S.W.3d 274, 296 (Tex. Crim. App. 2009); *Smith v. State*, 297 S.W.3d 260, 268 (Tex. Crim. App. 2009). We review the ruling with considerable deference because the trial judge is in the best position to evaluate a veniremember's demeanor

3

and responses. *Gardner*, 306 S.W.3d at 295–96; *see Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016) (explaining that "great deference" is afforded because "the trial judge is present to observe the demeanor of prospective jurors and to listen to tones of voice"). Further, "[w]hen a veniremember's answers are ambiguous, vacillating, unclear, or contradictory, we give particular deference to the trial court's decision." *Gardner*, 306 S.W.3d at 296; *accord Smith*, 297 S.W.3d at 268.

To show error in the trial court's grant of a State's challenge for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or that the trial court abused its discretion in applying the correct legal standard. *Ladd v. State*, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999); *Jones v. State*, 982 S.W.2d 386, 388–89 (Tex. Crim. App. 1998); *Vuong v. State*, 830 S.W.2d 929, 943 (Tex. Crim. App. 1992).

Article 35.16(a)(9) provides that a challenge for cause may be made by either party if "the juror has a bias or prejudice in favor of or against the defendant."[1] Tex. Code Crim. Proc. art. 35.16(a)(9). The test is whether the prospective juror's bias or prejudice would substantially impair his ability to carry out his duties in accordance with his instructions and his oath. *Buntion*, 482 S.W.3d at 84 (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)); *Gardner*, 306 S.W.3d at 295. "This standard does not require that a juror's bias be proved with 'unmistakable clarity' because many venire members simply cannot be asked enough questions

---

[1] In addition, "[t]he State may assert grounds for a challenge that are not included in Article 35.16 where the challenge is based on facts demonstrating that the prospective juror would be incapable of or unfit for jury service." *Granados v. State*, 85 S.W.3d 217, 231 n.37 (Tex. Crim. App. 2002); *accord Mason v. State,* 905 S.W.2d 570, 577 (Tex. Crim. App. 1995); *Allridge v. State*, 850 S.W.2d 471, 484 (Tex. Crim. App. 1991). "[A] veniremember is subject to a challenge for cause if his beliefs or opinions would prevent or substantially impair his ability to carry out his obligations as a juror." *Granados*, 85 S.W.3d at 230. Challenges that are not based upon any ground specifically enumerated in the statutes are ordinarily addressed to the sound discretion of the trial judge. *Id.*; *Mason*, 905 S.W.2d at 577.

4

to reach the point where their bias has been made 'unmistakably clear.'" *Buntion*, 482 S.W.3d 84 (citing *Witt*, 469 U.S. at 424–25).

Here, the record reflects that Veniremember Ellis demonstrated a bias against the prosecution. He initially indicated that his negative attitude toward prosecuting attorneys would elevate the State's burden of proof, although he later stated that he "under[stood] the beyond a reasonable doubt" and "[could] live with that." Subsequently, he articulated negative feelings toward the "busted" criminal justice system and expressed his belief that the State made a practice of pursuing prosecution "whether or not the guy is innocent or guilty."

Appellant does not dispute that Ellis's answers demonstrated a bias against the State. He argues, however, that article 35.16 "does not allow the State to make a challenge for cause because a venireperson has a bias against the State." Thus, according to appellant, the trial court "applied the wrong legal standard when it granted the State's challenge for cause for a reason not listed in article 35.16." His argument basically asserts that Ellis's bias against the State does not equate to "a bias or prejudice in favor of . . . the defendant."

However, "[t]he obvious purpose of the provisions [of article 35.16] is to guarantee fair and impartial jurors for both the State and the defendant." *Smith v. State*, 907 S.W.2d 522, 529 (Tex. Crim. App. 1995) (quoting *Ransom v. State*, 630 S.W.2d 904, 908 (Tex. App.—Amarillo 1982, no pet.)). Accordingly, "[w]hen a juror expresses an inability to be fair and impartial to the State, that juror is expressing a bias for the defendant and is properly excused." *Id.*; *see Mays v. State*, 904 S.W.2d 920, 924 (Tex. App.—Fort Worth 1995, no pet.) ("Bias against the State and in favor of the defendant is a proper ground for a challenge for cause.").

5

Appellant contends that "it was clear that [Ellis] could set aside any personal feelings he had towards the State and hold the State to its burden of proof." However,

> [w]hen the feeling expressed by a prospective juror is one of bias or prejudice in favor of or against the defendant (as opposed to a bias or prejudice against the law), it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice or bias.

*Smith*, 907 S.W.2d at 530; *see Gonzales v. State*, No. 01-17-00760-CR, 2019 WL 758002, at *3 (Tex. App.—Houston [1st Dist.] Feb. 21, 2019, no pet.) (mem. op., not designated for publication) ("There is a distinction between a true bias against one of the parties and an opinion that can be [set] aside."). "While a trial court may hold a juror qualified who states that he can lay aside an opinion he may have formed, no such discretion vests in the court with reference to a juror with a bias or prejudice against the parties." *Smith*, 907 S.W.2d at 530 (citing *Gonzalez v. State*, 331 S.W.2d 748 (Tex. Crim. App. 1960)).

In this case, the trial court heard Ellis's answers to the questions asked—including the vacillating and contradictory answers he gave about whether he would hold the State to a higher burden of proof—and observed the veniremember's demeanor as he answered those questions. Viewing the action of the trial court with the deference required, we cannot say that sustaining the State's challenge for cause was an abuse of discretion.

Moreover, even if the trial court erred in granting the State's challenge for cause against Veniremember Ellis, we must disregard a trial court's error in granting a State's challenge for cause unless it affected the defendant's substantial rights. *Jones*, 982 S.W.2d at 392; *see* Tex. R. App. P. 44.2(b). A defendant has no right, constitutional or statutory, to have a particular individual serve on his jury. *Jones*, 982 S.W.2d at 393; *Railsback v. State*,

6

95 S.W.3d 473, 483 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A defendant's rights are affected by those veniremembers who actually serve on the jury, not by those who are excused from service. *Gray v. State*, 233 S.W.3d 295, 299 (Tex. Crim. App. 2007); *Jones*, 982 S.W.2d at 393. A defendant's only substantial right in this context, therefore, is that the jurors who do serve be qualified. *Gray*, 233 S.W.3d at 301; *Jones*, 982 S.W.2d at 393. Thus, for an appellant to obtain reversal because of error in granting a State's challenge for cause, an appellant must show that the erroneously granted challenge for cause deprived him of a lawfully constituted jury. *Murphy v. State*, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003); *Feldman v. State*, 71 S.W.3d 738, 749 (Tex. Crim. App. 2002); *Jones*, 982 S.W.2d at 394. If the jurors who serve are qualified, then the jury is lawfully constituted, a defendant's substantial rights are not affected, and reversal of a defendant's conviction based on trial-court error in erroneously granting the State's challenge for cause is not required. *Jones*, 982 S.W.2d at 394; *Williams v. State*, 417 S.W.3d 162, 173–74 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Moore v. State*, 54 S.W.3d 529, 538 (Tex. App.—Fort Worth 2001, pet. ref'd).

Here, appellant has not contended or shown—nor does the record reflect—that the jury as finally constituted was not a lawfully constituted jury.

For the above reasons, we overrule appellant's first point of error.

### Sufficiency of the Evidence

In his second point of error, appellant challenges the sufficiency of the evidence supporting his felony murder conviction.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*,

7

561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, — U.S. —, 136 S. Ct. 709 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for

8

that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 136 S. Ct. at 715 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

The essential elements of felony murder are (1) an attempted or committed underlying felony (other than manslaughter), (2) an attempted or committed act clearly dangerous to human life, (3) the death of an individual, (4) causation (the dangerous act causes

the death), and (5) a connection between the underlying felony and the dangerous act ("in the course of and in furtherance of . . . or in immediate flight from"). *Contreras v. State*, 312 S.W.3d 566, 583–84 (Tex. Crim. App. 2010); *see* Tex. Penal Code § 19.02(b)(3). Count II of the indictment in this case alleged that, on the day in question, appellant

> did then and there commit or attempt to commit a felony, to wit: intentional or knowing aggravated assault or knowing deadly conduct, and in the course of and in furtherance of the commission or attempt, DEDRIC DIXON did then and there commit or attempt to commit an act clearly dangerous to human life, to-wit: discharging a firearm in the direction of CARLOS SWIST, that caused the death of CARLOS SWIST.

Appellant asserts that the evidence is insufficient because it fails to prove that he discharged the firearm that caused Swist's death—that is, it fails to demonstrate that he committed an act clearly dangerous to human life that caused another's death.

The jury heard undisputed evidence that on the morning of March 1, 2016, Carlos Swist was found dead in the white delivery van that he drove for the florist company for which he worked. The van had left the roadway and crashed into a tree near the intersection of Pecan Springs and Springdale Roads in Austin. The State offered circumstantial evidence regarding the events leading up to that incident.

The evidence at trial showed that a Pecan Springs resident, who lived near the Springdale intersection, was sitting in his kitchen with his wife when, shortly before he left for work at 7:00 a.m., he heard a "loud pop" like a firecracker or a gunshot. Several minutes later, when the resident left for work, he saw the white van in the bushes off of the road. He heard the engine running and noted that the back tires were spinning. He called 911 and reported the accident. The evidence showed that the spinning tires caught the surrounding brush on fire, and

10

the van caught on fire. The fire caused an explosion that knocked away a responding police officer who was attempting to put out the fire with a fire extinguisher.

The initial police dispatch was to a vehicle collision, which was upgraded to a "car on fire." After the explosion, the van was engulfed in flames, and the fire department was called to the scene. When the fire was extinguished, the police began to investigate the incident as a vehicle-fatality crash. However, the police soon discovered evidence indicating that the driver had been shot—a circular defect in the pillar of the driver's side door frame with a "blown-out pattern" and a bullet-entrance wound on the left side of the driver's head. With that discovery, a homicide investigation ensued. Police collected evidence from the crash scene and later from appellant's SUV and home. Police investigators obtained surveillance videos from nearby businesses and apartments, Fleetmatics system data for the van from the florist company that Swist worked for,[2] and appellant's cell-phone records. In addition, police interviewed employees of the nearby businesses, Swist's co-workers, and his girlfriend.

The evidence at trial showed that at approximately 6:32 a.m. on the morning of his death, Swist was involved in an altercation with appellant at a Conoco convenience store located at the intersection of Martin Luther King Jr. (MLK) and Airport Boulevards. The two men, both regular customers at the convenience store, argued over a $5 bill that Swist had dropped but that appellant believed to be his. The argument, which involved "strong language" and cursing, ended when appellant wrested the money from Swist's hand and walked away. Appellant then left the store yelling back at Swist as he walked out.

---

[2] A route manager from the florist company explained that the Fleetmatics system monitored the drivers by keeping "real time" data on the vans, including GPS information, start up and shut down times, and speed travelled.

11

The Conoco surveillance video showed that appellant left in a silver four-door Suzuki SUV, which the store clerk knew to be appellant's SUV. Appellant's SUV had several distinctive characteristics, including running boards, roof rails, tinted windows, and a hardcover spare wheel on the back that had "XL7" on it. The video showed appellant leaving the convenience store driving east on MLK in the direction of his home, which the evidence established was less than a mile from the Conoco. Several minutes later, at approximately 6:38 a.m., a silver 4-door SUV drove quickly through the Conoco parking lot but did not stop. Then, at approximately 6:49 a.m., the Conoco surveillance video again showed a silver 4-door SUV heading east on MLK. After passing through the intersection at Heflin Street, the silver SUV quickly changed lanes, cut through the Conoco parking lot, and then pulled alongside a white van, which was stopped on Springdale Road at the light at Heflin Street. The Conoco surveillance video combined with the Fleetmatics data confirmed that at 6:51 a.m. Swist's van was stopped on Springdale Road at the light at Heflin Street near the Conoco convenience store.

The video showed that a yellow cab in front of Swist's van pulled through the intersection when the light changed to green. However, neither Swist's van nor the silver SUV next to it moved. Approximately five to seven seconds elapsed before Swist's van proceeded through the intersection, moving northbound on Springdale Road. The silver SUV followed.

Surveillance video from Torchy's Taco headquarters on Springdale Road and the Fleetmatics data established that Swist was last seen driving the white van northbound on Springdale Road at 6:51:26 a.m. with a silver SUV in pursuit. The Fleetmatics data established that Swist's van was off the roadway at 6:52 a.m. at a location approximately ten seconds north of Torchy's Taco headquarters. Approximately two minutes after that, the silver SUV is seen on the Torchy's Taco surveillance video travelling in the opposite direction (southbound) on

12

Springdale Road at a high rate of speed. Additional surveillance video from the Conoco showed that same silver SUV then cut through a parking lot to quickly access MLK driving east, the direction of appellant's home.

Appellant's cell-phone records established that appellant was in the area of the shooting at the time of the murder. In addition, appellant's friend and neighbor testified that appellant called him that morning at around 6:55 a.m. and then arrived at his house, located about one-half block from appellant's home, within a minute or two. This evidence placed appellant driving his SUV in the area of the shooting at the time of Swist's murder.

The jury also heard evidence that police found an unfired Hornady .357 Magnum round of ammunition in the cubby of the driver's side door panel of appellant's SUV, which was consistent with the bullet fragment removed from Swist's head during the autopsy. Testimony established that a .357 Magnum had the power to penetrate and pass through the door frame of Swist's van, enter his head, and kill him. In appellant's home, in his bedroom closet, police found a plastic bag of unfired cartridges, which contained one Winchester .357 Magnum cartridge and nine .38 Special cartridges; a box of unfired .38 caliber cartridges; and a holster for a pistol. The evidence reflects that no gun was recovered. At trial, a forensic chemist testified about gunshot residue discovered on the passenger seat of appellant's SUV, which was consistent with someone reaching across the passenger seat to fire a gun.

The medical examiner testified that he determined that the cause of Swist's death was "a gunshot wound to the head." Expert testimony from both the medical examiner and the firearms examiner established that the bullet entered the left side of Swist's head and travelled front to back. The bullet trajectory indicated that Swist was looking back over his shoulder toward the left side of his van in the direction of the shooter when he was shot.

13

In his sufficiency challenge, while not disputing the above facts, appellant argues that the State failed to prove that it was appellant who discharged the gun at Swist because there was "no affirmative evidence" showing that the suspect silver SUV was appellant's Suzuki SUV. However, the evidence showed that appellant drove a silver 4-door SUV with dark tinted windows, running boards, roof rails, and a hardcover spare wheel on the back and that he was driving his SUV in the area of the shooting at the time of the murder. Photographs, surveillance videos, and still photos from the videos that depicted appellant's SUV and the suspect silver SUV that followed Swist's van were admitted at trial. This evidence allowed the jury to compare the two vehicles and, coupled with other evidence admitted, determine whether the suspect silver SUV was appellant's SUV.

Appellant further complains that "there was no direct evidence that appellant fired the fatal shot that struck the victim" because no murder weapon was ever found, no fired cartridge was ever found, and no fingerprints or DNA were recovered from the live round found in appellant's SUV. However, direct evidence, including "physical evidence" or a weapon, is not required to prove guilt. "[T]he law requires no particular type of evidence." *Johnson*, 560 S.W.3d at 226; *see Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Circumstantial evidence, such as physical evidence, forensic evidence, or electronic evidence, can link a defendant to the commission of an offense. *See Nisbett v. State*, 552 S.W.3d 244, 266 (Tex. Crim. App. 2018).

The essence of appellant's argument is that no direct evidence shows that he discharged the firearm that caused Swist's death and that the circumstantial evidence suggesting that he did so is weak or subject to alternative explanations. However, in making his argument,

14

appellant emphasizes particular evidence missing from the trial evidence—for example, corroborating evidence, such as the license-plate number of the silver SUV following Swist's white van (to confirm that it was in fact appellant's SUV); physical evidence, such as the murder weapon used to shoot Swist; and forensic evidence, such as appellant's DNA or fingerprints on the ammunition in his SUV. Appellant's focus is contrary to the well-established procedure for conducting a legal-sufficiency review. *See Clayton*, 235 S.W.3d at 778 (in conducting legal-sufficiency review, courts assess "all of the evidence" admitted at trial); *Boston v. State*, 373 S.W.3d 832, 836 (Tex. App.—Austin 2012) ("In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense.") (citations omitted), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013). In reviewing the sufficiency of the evidence, we assess whether the jury's finding of guilt was justified considering the evidence that was admitted at trial, not what evidence is absent from the record.

Moreover, when examining the legal sufficiency of the evidence, the reviewing court must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Zuniga*, 551 S.W.3d at 733; *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). By examining the evidence piecemeal and offering alternative explanations for it— for example, appellant argues that the gunshot residue on the passenger seat of his SUV could have been deposited in ways other than appellant shooting a gun at Swist as he reached across the seat—appellant engages in this type of impermissible analysis. *See Murray*, 457 S.W.3d at 448 (observing that "[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence" (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)). Further, "[l]egally sufficient evidence need not exclude every conceivable

alternative to a defendant's guilt." *Johnson*, 560 S.W.3d at 226 (citing *Ramsey v. State*, 473 S.W.3d 805, 811 (Tex. Crim. App. 2015)); s*ee Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex. Crim. App. 1991) (disavowing reasonable-alternative-hypothesis construct), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 570 (Tex. Crim. App. 2000).

The evidence in this case—including surveillance videotapes with timestamps, the Fleetmatics data, and appellant's cell-phone records—tracked the movements of appellant and Swist from the time of the altercation in the Conoco through Swist's death and immediately afterward. Forensic evidence—including live rounds of ammunition in appellant's SUV and home consistent with the bullet fragment removed from Swist's head and gunshot residue in appellant's SUV—connected appellant to the discharge of a firearm and the bullet that caused Swist's death. *See Nisbett*, 552 S.W.3d at 266 (observing that circumstantial evidence can link defendant to commission of offense). Additionally, the evidence demonstrated that appellant had a motive and the opportunity to shoot Swist. *See id.* at 265 (noting that opportunity, when coupled with motive, is indicative of guilt).

Based on the combined and cumulative force of the circumstantial evidence, along with the reasonable inferences drawn from it, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant discharged a firearm at Swist causing his death. *See, e.g.*, *Gardner*, 306 S.W.3d at 285 ("Although no eyewitness testified in court to seeing appellant shoot [the deceased] or even to seeing him in Texas on the day that she was shot, the State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence."). Therefore, we hold that the evidence is sufficient to support appellant's conviction for felony

murder.  *See Nisbett*, 552 S.W.3d at 266–67.  Accordingly, we overrule appellant's second point of error.

## Errors in Written Judgment

In his third point of error, appellant asks this Court to modify the trial court's written judgment of conviction because it incorrectly indicates that appellant pled "NOT TRUE" to the first enhancement paragraph of the indictment.

The record does not reflect that appellant formally entered a plea to the enhancement paragraph of the indictment.  However, the record reflects that, at the beginning of the punishment phase, appellant stipulated to the prior convictions alleged in the enhancement paragraph.[3]  Subsequently, when the State offered exhibits related to appellant's prior convictions, appellant indicated that he had "stipulated to these," and the exhibits were admitted

---

[3]  Specifically, at the beginning of the punishment phase, the trial court informed the jury that "[t]here's an enhancement paragraph here," and the following ensued:

| | |
|---|---|
| PROSECUTOR: | Your Honor, the Defense has stipulated to the enhancement paragraph.  It's contained in the Court's Charge on Punishment, so we don't need to read it to the jury at this time.  We can argue it when we argue the charge. |
| THE COURT: | Do they need to have anything that makes them aware of what, when, and where? |
| PROSECUTOR: | We can offer an exhibit into evidence to help summarize that, but I think the Court's charge also does an excellent job of summarizing it. |
| THE COURT: | Okay.  Is that the agreement, [defense counsel]? |
| COUNSEL: | Yes, Your Honor. |
| THE COURT: | Okay.  We'll accept y'all's stipulation and agreement concerning the enhancement paragraph. |

17

without objection. Further, in the trial court's charge on punishment, the court stated that appellant had entered a plea of true to the enhancement allegations and instructed the jury to find that the enhancement allegations were true.

The Texas Court of Criminal Appeals has explained that a defendant's stipulation to evidence against him or her "is a kind of judicial admission." *Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005). The court recognized that "a fact that is judicially admitted needs no evidence from the party benefitting by the admission," *id.* (quoting 9 *Wigmore on Evidence* § 2591 (3d ed. 1940)), and clarified that

> [a]n express waiver, made in court or prepatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. . . . It is, in truth, a substitute for evidence, in that it does away with the need for evidence.

*Id.* (quoting *Wigmore* § 2588). Consequently, a stipulation to prior convictions is a judicial admission that "remove[s] the need for proof of those convictions." *Id.* at 402.

Both of the parties agree that, by his stipulation to the prior convictions, appellant in effect pled true to the enhancement paragraph of the indictment. We agree. *See, e.g.*, *Evans v. State*, 202 S.W.3d 158, 163 n.16 (Tex. Crim. App. 2006) ("[W]hen a felony DWI defendant stipulates to having two prior DWI convictions, he has admitted that this fact is true."). Because the record in this case demonstrates that appellant essentially pled "true" to the enhancement paragraph, the recitation that appellant pled "not true" is erroneous. Accordingly, we sustain appellant's third point of error.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Therefore, we modify the trial court's written judgment of conviction to reflect that appellant pled "TRUE" to the first enhancement paragraph of the indictment.

In responding to appellant's third point of error, the State submits that the judgment of conviction contains an additional non-reversible clerical error. We agree. The judgment states that the "Statute for Offense" is "19.02(c) Penal Code." This statutory provision establishes that the offense of murder is, generally, a first-degree felony. However, the applicable statutory provision for the offense for which appellant was convicted is section 19.02(b)(3), the statutory provision that defines the offense of felony murder. For that reason we further modify the trial court's written judgment of conviction to reflect that the "Statute for Offense" is "19.02(b)(3) Penal Code."

## CONCLUSION

Having concluded that the trial court did not err in granting the State's challenge for cause against Veniremember Ellis and that the evidence is sufficient to support appellant's conviction for felony murder but concluding that the written judgment of conviction contains non-reversible error, we modify the judgment as noted above to correct the error and, as modified, affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Modified and, as Modified, Affirmed

Filed:   November 8, 2019

Do Not Publish